UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1524(DSD/SRN)

Dr. Performance of Minnesota, Inc., a Minnesota corporation,

Plaintiff,

v. **ORDER**

Dr. Performance Management, L.L.C., a limited liability company, Thomas Rikli, Richard Rikli, Ronald Baldwin, Jerry Atkins, John Doe and Mary Roe, whose names are unknown to plaintiff,

Defendants.

v.

Dr. Performance Management, L.L.C., Ronald Baldwin and Jerry Atkins,

Defendants and Third-Party Plaintiffs,

v.

Dr. Performance, Inc., an Idaho corporation, and Barry Sadler a/k/a Barry Saddler,

Third-Party Defendants.

Gerald S. Duffy, Esq., M. Gregory Simpson, Esq., and Siegel, Brill, Greupner, Duffy & Foster, 1300 Washington Square, 100 Washington Avenue South, Minneapolis, MN 55401 and Robert F. Rode, Esq., and Voigt, Jensen & Klegon, 2550 University Avenue West, Suite 190S, St. Paul, MN 55114, counsel for Dr. Performance of Minnesota, Inc.

FILED 11-12-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ________
Deputy Clerk's Initials ______

Shannon L. Doering, Esq., Joseph H. Badami, Esq. and Woods & Aitken, 301 13th Street South, Suite 500, Lincoln, NE 68508 and Brian L. Lindberg, Esq., and Hinshaw & Culbertson, 222 9th Street South, Suite 3100, Minneapolis, MN 55402 counsel for Dr. Performance Management, L.L.C., Ronald Baldwin, Jerry Atkins.

Phillip Gainsley, Esq., and Gainsley Law Office, 701 Fourth Avenue South, Suite 527, Minneapolis, MN 55415, counsel for Thomas Rikli.

This matter is before the court on the motion of defendants Ronald Baldwin ("Baldwin") and Jerry Atkins ("Atkins") for summary judgment (all counts), upon the motion of defendants Baldwin and Atkins for partial summary judgment (Count I), upon the motion of defendant Thomas Rikli ("T. Rikli") to dismiss or in the alternative for summary judgment, upon the motion of defendants Baldwin, Atkins and Dr. Performance Management L.L.C. ("L.L.C.") pursuant to Rule 56(e) to strike and upon the motion of plaintiff Dr. Performance of Minnesota, Inc. ("Dr. Performance of MN") for partial summary judgment (Count I). After a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendants Baldwin and Atkins' motion for summary judgment, denies as moot Baldwin and Atkins' motion for partial summary judgment, grants defendant T. Rikli's motion to dismiss, denies defendants Baldwin, Atkins and the L.L.C.'s motion to strike and denies plaintiff's motion for partial summary judgment.

**BACKGROUND**

Plaintiff, Dr. Performance of MN, a Minnesota corporation, was incorporated on May 11, 1999. Dunham is its sole incorporator and president. Dr. Performance of MN sold and installed diesel engine performance-enhancing products marketed under the trademark "Dr. Performance." In 1997, Dunham began using Dr. Performance products in his own vehicles. He and his brother, Bob Dunham, then purchased $30,000 of inventory for sale to others. However, the brothers were unable to sell the products, and Dunham insisted that his supplier, Dr. Barry Sadler ("Sadler"), repurchase their inventory. Dunham changed his mind after Sadler explained that his company, Dr. Performance, Inc., was undergoing organizational changes and had tremendous potential. Sadler informed Dunham that a newly forming entity, Dr. Performance Management L.L.C., would take over the management of the organization and the marketing of Dr. Performance products through a nationwide network of independent dealers. The L.L.C. was incorporated in Colorado in April, 1999. It was initially managed by T. Rikli and his brother, R. Rikli.

Relying on Sadler's promises and encouragement, Dunham incorporated Dr. Performance of MN in May 1999. In July of that year, after extensive negotiations between Sadler and Dunham, Dr. Performance of MN entered into a "Dealer Agreement" with the L.L.C. Dr. Performance of MN paid the L.L.C. $100,000 for exclusive rights

to sell Dr. Performance products in Minnesota. The agreement also called for the L.L.C. to provide customers to Dr. Performance of MN via marketing, referrals and a national toll-free phone number. Dunham relied exclusively upon Sadler's reassurances in entering the dealer agreement. (Dunham Aff. 47-8.) At Sadler's request, T. Rikli, the L.L.C.'s manager, signed and mailed the dealer agreement to Dunham. (T. Rikli aff. at 39-41.) T. Rikli also received and endorsed Dunham's $100,000 payment to the L.L.C. and forwarded it to Sadler. (T. Rikli Aff. at 86-8.) The L.L.C. was not registered to offer or to sell franchises in Minnesota.

After the dealer agreement was executed, Dr. Performance of MN leased a shop facility in Lakeville, Minnesota, which it modified in accordance with instructions from the L.L.C. Dunham also received Dr. Performance training in August 1999 to learn about marketing and installing the Dr. Performance system. Because sales were so poor both before and after its incorporation, Dr. Performance of MN never purchased any products from the L.L.C. Dunham became concerned that the L.L.C. was misleading and misdirecting customers. (Am. Compl. ¶ 16-18.) In November 1999, T. Rikli resigned from his position as manager of the L.L.C. He was replaced by an existing investor, Ronald Baldwin (Baldwin). Another investor, Jerry Atkins (Atkins), became co-manager shortly thereafter. At about that time, Sadler insisted that Dunham stop dealing with the L.L.C. but continue working directly with his

company, Dr. Performance, Inc., even though the dealer agreement required that Dr. Performance of MN work exclusively through the L.L.C.

Despite Sadler's predictions, Dr. Performance of MN lost money rapidly and ultimately failed. Dr. Performance of MN, through Dunham, then filed suit naming as defendants the L.L.C., T. Rikli, R. Rikli, Baldwin, Atkins and John Doe and Mary Roe (names unknown). Plaintiff's complaint alleges violation of the Minnesota Franchise Act, breach of contract, negligent misrepresentation, fraud, deceptive trade practices and consumer fraud.

Plaintiff moves for partial summary judgment on Count I, violation of the Minnesota Franchise Act. Defendants Baldwin and Atkins have filed cross motions for summary judgement, on Count I individually, and on all counts in a separate motion. They have also joined the L.L.C. in its motion to strike a portion of plaintiff's pleadings pertaining to damages. Defendant T. Rikli has filed a motion to dismiss. Defendant L.L.C. has filed counterclaims against Dr. Performance of MN and third-party claims against Dr. Performance, Inc. and its principal, Barry Sadler, seeking contribution or indemnification and alleging interference with a business relationship, unjust enrichment and fraud. Defendants Baldwin and Atkins join the L.L.C. in seeking contribution or indemnification from the third-party defendants. For the reasons discussed below, the court denies plaintiff's

motion for partial summary judgment, denies as moot defendants Baldwin and Atkins' motion for partial summary judgment, grants defendants Baldwin and Atkins' motion for summary judgment, denies defendants the L.L.C., Baldwin and Atkins' motion to strike and grants defendant T. Rikli's motion for summary judgment.

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Defendants Baldwin and Atkins Motion for Summary Judgment (All Counts)

Defendants Baldwin and Atkins seek summary judgment on all counts, asserting that this court cannot exercise personal jurisdiction over them. In diversity actions based on Minnesota statutory and common law claims, this court exercises personal jurisdiction to the extent permitted by the state long-arm statute and the due process requirements of the United States Constitution.[1] See Wines v. Lake Havasu Boat Mfg., Inc., 846 F.2d

---

[1]The Minnesota long-arm statute states, in pertinent part:

> As to a cause of action arising from acts enumerated in this subdivision, a court of this state within jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any non-resident individual ... in the same manner as if it were a domestic corporation or the individual were a resident of this state. The section

(continued...)

40, 42 (8th Cir. 1988). The reach of Minnesota's long-arm statute has been deemed coextensive with constitutional due process. See Toro Co. v. Ballas Liquidating Co., 572 F.2d 1267, 1269 (8th Cir. 1978); Viske v. Flaby, 316 N.W.2d 276, 281 (Minn. 1982). Thus, when considering challenges to its exercise of personal jurisdiction under Minnesota law, the court need focus only on whether such exercise comports with due process.

The Eighth Circuit has held that "due process requires both minimum contacts with the forum state and accord with the notions of 'fair play and substantial justice.'" Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 921 (8th Cir. 1995) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)). Under the minimum contacts analysis, defendants at the very least "must have purposely availed [themselves] of 'the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Bell Paper Box, 53 F.3d at 922 (quoting Hanson v. Denkla, 357 U.S. 235, 253 (1958). The proper focus of the analysis is on defendants' contacts with the

---

[1](...continued)

> applies if, in person or through an agent, the foreign corporation or non-resident individual:
>
> > (a) Owns, uses, or possesses any real or personal property situated in this state, or
> > (b) Transacts any business within the state ....

Minn. Stat. § 543.19 subd. 1.

forum state itself, not simply their contacts with plaintiffs. See Land-O-Nod Co. v. Bassett Furniture Industries, Inc., 708 F.2d 1338, (8th Cir. 1983) ("the central concern of the inquiry" ... is "the relationship among the defendant, the forum and the litigation") (citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).

Baldwin and Atkins assert that they have had no contacts with Minnesota, either related to plaintiff's claims or not. Only one conversation ever took place between Dunham and Atkins, and it occurred in Kansas several months after the Dealer Agreement was executed. (Doering Aff. Ex. D at 3.) There is no evidence of any contact at all between Baldwin and plaintiff. Because Baldwin and Atkins have virtually no contacts with Minnesota, this court's exercise of personal jurisdiction over them would not comport with due process.

Plaintiff argues, nonetheless, that Baldwin and Atkins waived the personal jurisdiction defense by filing a non-compulsory third-party complaint against Sadler and his company, Dr. Performance, Inc. Plaintiff further argues that as officers of the L.L.C., Baldwin and Atkins come within the reach of the Minnesota long-arm statute even absent any other basis for personal jurisdiction.

Plaintiff cites Frank's Casing Crew v. PMR Technologies, 292 F.3d 1363 (Fed. Cir. 2002) in support of its waiver argument. That court reasoned that a defendant availing itself of the court's jurisdiction by bringing unrelated claims against unrelated parties

has waived the personal jurisdiction defense. See id. at 1371-72. Frank's Casing Crew is inapposite however, because third-party claims for indemnification based on the same transaction or series of occurrences do not effectuate a waiver. See Lomanco, Inc. v. Missouri Pacific RR Co., 566 F. Supp. 846, 849-50 (D. Minn. 1983); Majerus v. Walk, 275 F. Supp. 952, 955 (D. Minn. 1967). Because Baldwin and Atkins joined with the L.L.C. only in Count I of the third-party complaint, seeking indemnification or contribution arising from the same transaction or series of occurrences, they have not waived the personal jurisdiction defense.

Plaintiff additionally asserts that Baldwin and Atkins are officers of the L.L.C., and as such, share joint and several liability with it under the Minnesota Franchise Act. See Minn. Stat. § 80C.17; see also State v. Continental Forms, Inc., 356 N.W.2d 442, 444 (Minn. Ct. App. 1984) Even absent direct personal contacts, such statutory liability may establish an officer or director's minimum contacts with the forum state. See id. In order for personal liability to attach to controlling persons under the Minnesota Franchise Act, they must have been in positions of control at the time of the alleged violation, or actively participated in the violation. See Minn. Stat. § 80C.17, subd. 2.

Here, however, plaintiff has failed to produce evidence of either. The alleged violation of the Minnesota Franchise Act took place in July 1999. Both Baldwin and Atkins were Class B investors

with no voting rights or other authority over the L.L.C. at that time. (T. Rikli Aff. at 23-4, 96-7.) They did not become managers and voting shareholders until November 1999. Plaintiff cannot establish personal jurisdiction over Baldwin and Atkins based on violations it alleges the L.L.C. committed several months before they took an active role in the L.L.C. See Avery v. Solargizer, Int'l, Inc., 427 N.W.2d 675, 682 (Minn. Ct. App. 1988).[2] Therefore, the court finds no basis upon which it can exercise personal jurisdiction over defendants Baldwin and Atkins and grants their motion for summary judgment.[3]

## III. Defendant T. Rikli's Motion to Dismiss or in the Alternative for Summary Judgment[4]

T. Rikli similarly moves for dismissal or summary judgment on personal jurisdiction grounds. Plaintiff alleges that T. Rikli

---

[2] See also Matter of Dougherty, 482 N.W.2d 485, 490 (Minn. Ct. App. 1992) (holding that personal liability attaches to corporate officers only if: (1) the officer holds a position of influence over corporate policies or activities; (2) there is a nexus between the officer's position and the violation; and, (3) the officer's actions actually caused or facilitated the violations). Here, Baldwin and Atkins were not officers or voting shareholders at the time of the alleged violation. Further, plaintiff has made no meaningful showing that they were in a position to influence the corporation in any way related to the alleged violations or that they in fact facilitated the alleged violations.

[3] Because the court grants Baldwin and Atkins' motion for summary judgment on all counts, it need not consider their motion for summary judgment as to Count I.

[4] Where this court considers more than the bare pleadings on a motion to dismiss, it treats the motion as a motion for summary judgment. See Hamm v. Rhone Poulanc Rorer Pharmaceutical Inc., 173 F.R.D. 566, 570 (D. Minn. 1997).

initiated contact with it, negotiated and sold the dealer agreement to it, mailed the contract to it, and received and endorsed a check from it. (Pl.'s Mem. in Opp'n at 8.) However, the record indicates that it was Sadler who initiated and fostered the relationship between the L.L.C. and Dr. Performance of MN. (T. Rikli Dep. at 39-40; Dunham Dep. at 44-7.) Likewise, it was Sadler, and not T. Rikli, who negotiated the terms of the dealer agreement. (T. Rikli Dep. at 39-40; Dunham Dep. at 44-7.) While T. Rikli concedes that he mailed the proposed agreement to plaintiff and received and endorsed plaintiff's check, it was Sadler, not the L.L.C., that determined the contract price, and the payment flowed directly from the L.L.C. to Sadler. (T. Rikli Dep. at 47-8.) Thus, the question is whether, by virtue of mailing the contract and receiving and depositing the payment, or alternatively, by means of the fact that he was the L.L.C.'s manager at the time the dealer agreement was executed, T. Rikli may be said to have "availed himself of the benefits and protection of Minnesota law" such that he was put on notice that he might be sued in that forum. Hanson v. Denkla, 357 U.S. 235, 253 (1958); see also World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (holding that before personal jurisdiction can be exercised over a non-resident defendant, he must have reasonably foreseen being sued in the forum state).

The court finds that it would violate due process to require T. Rikli to defend this lawsuit in Minnesota solely on the basis of his limited and attenuated contacts with this state. It is well-settled in this circuit that phone calls and mailings between residents of diverse jurisdictions alone are insufficient to establish minimum contacts with the forum state. See Scullin Steel Co. v Nat'l RR Utilization Corp., 676 F.2d 309, 314 (8th Cir. 1982).[5] Similarly, the existence of a contract between citizens of different states has also been held an insufficient basis for personal jurisdiction. See Iowa Electric Light and Power Co. v. Atlas Corp., 603 F.2d 1301, 1303 (8th Cir. 1979).

Thus, personal jurisdiction must be found, if at all, based upon T. Rikli's role as manager of the L.L.C. Plaintiff reiterates its argument that the Minnesota Franchise Act makes controlling persons jointly and severally liable with the corporation for violations of the Act and that, under State of Minnesota v. Continental Forms, Inc., 356 N.W.2d 442, 444 (Minn. Ct. App. 1984),

---

[5] Plaintiff cites Minnesota Mining & Mfg. v. Rauh Rubber, Inc., 943 F. Supp. 1117 (D. Minn. 1996) for the proposition that a non-resident corporate officer's personal involvement in the corporation's transaction with a Minnesota resident may establish personal jurisdiction. However, the *degree* of involvement was the determinative factor in that case. See id. at 1123-4. The decision describes extensive and on-going contacts with the forum state that are not present in the instant case. See id. Further, the 3M court did not exercise personal jurisdiction over another defendant officer who had more extensive personal contact with the forum state than did T. Rikli in this case. See id. at 1124-5.

even absent minimum contacts, the court may exercise personal jurisdiction. In Continental Forms the Minnesota Court of Appeals held that personal jurisdiction over officers of a non-resident corporation could be based on a Minnesota tax statute making controlling officers primarily liable for sales and withholding tax violations. See id. Plaintiff contends that the officer liability created by the Minnesota Franchise Act has the same effect.

However, the court finds that Continental Forms is distinguishable because, in that case, the non-resident corporate officers had one very important contact with the forum state--their names were included on the state tax identification form registered with the forum state. See id. Here, T. Rikli had no similar contact with Minnesota, and therefore, the officer liability section of the Minnesota Franchise Act cannot alone provide a basis for personal jurisdiction. To hold otherwise would vitiate the due process requirements of personal jurisdiction. Therefore, the court grants defendant T. Rikli's motion for summary judgment.

**IV. Defendants Baldwin, Atkins and the L.L.C.'s Motion to Strike**

Because the court has granted the motions of defendants Baldwin and Atkins for summary judgment, it considers the motion to strike solely as to the L.L.C. The L.L.C. moves the court to strike Exhibit 8 of the Affidavit of M. Gregory Simpson, filed in support of plaintiff's motion for summary judgment. The L.L.C. asserts that the exhibit, which includes documents identified as

plaintiff's balance sheets, profit and loss statements and tax returns, contains inadmissible hearsay and lacks foundation. It argues that the balance sheets were created by plaintiff's accountant and were based on neither Dunham's (plaintiff's president), nor M. Gregory Simpson's (the affiant and plaintiff's attorney) personal knowledge.

Affidavits supporting motions for summary judgment must "be made on personal knowledge [and] set forth such facts as would be admissible in evidence...." Fed. R. Civ. P. 56(e). The L.L.C. makes much of Dunham's statement in deposition that his accountant could provide underlying documentation supporting the balance sheets and profit and loss statements. (Doering Aff. Ex. A at 245-6.) However, as the same transcript makes clear, Dunham had sufficient personal knowledge to authenticate the documents in question. (Doering Aff. Ex. A at 241-6.) Further, because the documents are of the sort made "from information transmitted by [] a person with knowledge [and] kept in the course of a regularly conducted business activity," they are admissible as an exception to the hearsay rule. Fed. R. Ev. 803(6). Therefore, the L.L.C.'s motion to strike is denied.

## V. Plaintiff's Motion for Partial Summary Judgment (Count I)

Plaintiff has moved for summary judgment against all defendants on Count I of its complaint.[6] Because the court has granted summary judgment in favor of defendants Baldwin, Atkins and T. Rikli, it considers plaintiff's motion only in regards to defendants L.L.C., Richard Rikli, John Doe and Mary Roe. Of these, only the L.L.C. has filed an answer to the complaint and a responsive brief to plaintiff's motion for partial summary judgment.

After carefully reviewing the record, the court concludes that the L.L.C. has introduced substantial evidence on critical fact issues. Both state and federal courts applying Minnesota law have held that franchisees seeking rescission and restitution under the MFA must first overcome any equitable defenses to rescission. See Clapp v. Peterson, 327 N.W.2d 585, 587 (Minn. 1982); Metro All Snax, Inc. v. All Snax, Inc., Bus. Franchise Guide (CCH) ¶ 10,885 (D. Minn. 1996).[7] Viewing the record in the light most favorable

---

[6] Count I alleges that defendants violated Minnesota Statutes section 80C.02 (the Minnesota Franchise Act) by failing to register the L.L.C. prior to offering or selling a franchise to plaintiff.

[7] In Metro All Snax, Judge Alsop held that, despite factual differences with Clapp militating against defendant's equitable defenses,

> the relevant holding [of Clapp] ... is that equitable defenses are available to [the defendant] in an action for rescission of a franchise agreement. It follows from Clapp that the court cannot grant summary judgment

(continued...)

to the non-moving party, as is required under Fed. R. Civ. P. 56, the court concludes that genuine issues of material fact exist concerning the L.L.C.'s equitable defenses to Count I. Summary judgment is therefore inappropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants Ronald Baldwin and Jerry Atkins' motion for summary judgment on all counts [Doc. No. 25] is granted;

2. Defendants Ronald Baldwin and Jerry Atkins' motion for partial summary judgment [Doc. No. 45] is denied as moot;

3. Defendant Thomas Rikli's motion for summary judgment [Doc. No. 35] is granted;

4. Defendants Ronald Baldwin, Jerry Atkins and Dr. Performance Management L.L.C.'s motion to strike [Doc. No. 50] is denied; and

---

[7](...continued)

> on [plaintiff's] claim for rescission so long as there is a genuine issue of fact as to whether or not [defendant's] equitable defenses have merit.

Metro All Snax at ¶ 10,885.

5. Plaintiff's motion for partial summary judgment (Count I) [Doc. No.39] is denied.

Dated: November 12, 2002

David S. Doty, Judge
United States District Court